# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

**TRACEY KOON-BRANCH,**

      **Plaintiff,**

          **Case No. 2:17-cv-1339**

   **v.**           **Magistrate Judge Norah McCann King**

**ANDREW SAUL,**
**Commissioner of Social Security,**

      **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Tracey Koon-Branch for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.*[1] Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

---

[1] As explained below, Plaintiff seeks review of only the denial of her application for supplemental security income. *Plaintiff's Reply Brief*, ECF No. 31, p. 1.

[2] Andrew Saul, the current Commissioner of Social Security, is substituted as Defendant in his official capacity.

## I.  PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance benefits and supplemental security income on October 10, 2012, and November 16, 2012, respectively,[3] alleging that she has been disabled since May 1, 2005. R. 32, 106−07, 252−61. The applications were denied initially and upon reconsideration. R. 108−55, 161−77. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 178−79.

On January 8, 2015, prior to the administrative hearing, Plaintiff amended her alleged disability onset date to January 1, 2012. R. 225. This amended alleged onset date post-dated Plaintiff's date last insured for disability insurance benefits, which was March 31, 2010. R. 1, 14, 32−33, 279, 298. Administrative Law Judge Kimberly Schiro ("ALJ") held an administrative hearing on May 1, 2015, at which Plaintiff, who was represented by counsel, appeared and testified, as did a vocational expert. R. 48−92. In a decision dated May 13, 2015, the ALJ, citing Plaintiff's amended alleged disability onset date of January 1, 2012, dismissed Plaintiff's request for disability insurance benefits as effectively withdrawn. R. 32−33. As to her remaining claim for supplemental security income, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act since November 16, 2012, the date on which the application for supplemental security income was filed. R. 32−42.

On December 7, 2016, the Appeals Council declined review on December 27, 2016. R. 14−17. However, in a letter dated March 20, 2017, the Appeals Council set aside that earlier action to consider additional information. R. 1−6. The Appeals Council nevertheless denied Plaintiff's request for review, explaining as follows:

---

[3]Plaintiff filed two prior applications for disability insurance benefits and supplemental security income; those applications were denied in 2008 and 2012. R. 109.

After considering the additional information, we found no reason under our rules to review either the dismissal action or the decision of the Administrative Law Judge. Therefore, we have denied your request for review.

This means that the Administrative Law Judge's decision is the final decision of the Commissioner of Social Security in your case regarding your application for supplemental security income benefits, dated November 16, 2012.

The Administrative Law Judge dismissed part of your request for hearing with respect to your application for a period of disability and disability insurance benefits (Title II) regarding whether you were disabled on or before March 31, 2010, your date last insured.

Therefore, our earlier determination dated August 23, 2013 about that period stands as the final decision of the Commissioner of Social Security.

R. 1.

Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On October 22, 2020, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 32.[4] On October 23, 2020, the case was reassigned to the undersigned. ECF No. 33. The matter is now ripe for disposition.

## II.   LEGAL STANDARD

### A.   Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a

---

[4]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016).  The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting

4

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));
*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists
only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is
overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or
"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of
Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see
K.K.*, 2018 WL 1509091, at *4.  The ALJ decision thus must be set aside if it "did not take into
account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp.
at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular
format in conducting [the] analysis," the decision must contain "sufficient development of the
record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d
501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.
2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an
expression of the evidence s/he considered which supports the result, but also some indication of
the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121
("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication
of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing
*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a
comprehensive explanation for the rejection of evidence; in most cases, a sentence or short
paragraph would probably suffice." *Cotter*, 650 F.2d at 482.  Absent such articulation, the Court
"cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As
the Third Circuit explains:

5

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284−85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

### B.      Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R.§ 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 416.920(e), (f).

If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 49 years old on the date the application for supplemental security income was filed. R. 40.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 16, 2012, the application date. R. 34.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: bipolar disorder, degenerative changes of the lumbar spine, history of brain aneurysm with spontaneous resolution, essential hypertension, asthma, obesity, and mildly deficient intellectual functioning. *Id.*

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 35−36.

At step four, the ALJ found that Plaintiff had the RFC to perform light exertion with various additional limitations. R. 36−40. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a bartender, forklift driver, and addressing clerk. R. 40.

At step five, the ALJ found that a significant number of jobs−*i.e.*, approximately

129,296 jobs as an inspector and hand packager; approximately 26, 809 jobs as a photocopying machine operator; and approximately 70,976 jobs as a sealing and canceling machine operator−existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 41. The ALJ therefore concluded that Plaintiff has not been under a disability within the meaning of the Social Security Act since November 16, 2012, the date the application for supplemental security income was filed. *Id*.

Plaintiff disagrees with the ALJ's findings at steps three, four, and five and apparently asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief Pursuant to Local Rule 9.1,* ECF No. 21; *Plaintiff's Reply Brief*, ECF No. 31. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 26.

## IV.   DISCUSSION

### A.   Claim for disability insurance benefits

As previously discussed, Plaintiff's claim for disability insurance benefits was previously dismissed because her amended alleged disability onset date of January 1, 2012, post-dated March 31, 2010, the date on which Plaintiff was last insured for purposes of disability insurance benefits. R. 1, 32−33, 171−73. Plaintiff's appeal to this Court originally included an appeal from the denial of her claim for disability insurance benefits as well as her claim for supplemental security income. ECF Nos. 1, 3. However, Plaintiff thereafter clarified her claims and represented that she now intends to pursue only the claim for supplemental security income. ECF

No. 31, p. 1. Accordingly, the Court grants Plaintiff's request to amend, which dismisses her claim for disability insurance benefits, *id*., and addresses in this decision the merits of only her claim for supplemental security income.

### B.      Step Three

Plaintiff argues that the ALJ erred at step three of the sequential evaluation when she concluded that Plaintiff's impairments neither meet nor equal a listed impairment, including Listing 12.02. *Plaintiff's Brief Pursuant to Local Rule 9.1,* ECF No. 21, pp. 12–18; *Plaintiff's Reply Brief*, ECF No. 31, pp. 2–7. Plaintiff specifically contends that the ALJ erred in failing to analyze the requirements of Listing 12.02, and improperly focused on Listing 12.05, and further erred in concluding that Plaintiff did not meet or equal Listing 12.02A, 12.02B, or 12.02C. *Id*. Plaintiff's arguments are not well taken.

At step three, an ALJ considers whether the combination of the claimant's medically determinable impairments meets or equals the severity of one of the impairments in the Listing of Impairments. 20 C.F.R. § 416.920(a)(4)(iii). An impairment meets a listed impairment if it satisfies "'*all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *Jones,* 364 F.3d at 504 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)) (emphasis in original). Moreover, "[a] claimant cannot qualify for benefits under the 'equivalence' step by showing that the *overall* functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Zebley*, at 531 (emphasis added). "[T]he medical criteria defining the listed impairments [are set] at a higher level of severity than the statutory standard" because the "listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial

10

gainful activity.'" *Id.* at 532 (emphasis in original) (quoting 20 C.F.R. § 416.925(a)).

Plaintiff first complains that the ALJ referred to Listing 12.02 at step three of the sequential evaluation but did not discuss the criteria of that listing, but instead improperly considered the criteria of Listing 12.05. *Plaintiff's Brief Pursuant to Local Rule 9.1,* ECF No. 21, pp. 12–18; *Plaintiff's Reply Brief*, ECF No. 31, p. 2. However, as discussed in depth below, the ALJ did specifically consider the criteria of Listing 12.02, noting that the "paragraph B" criteria of Listings 12.02 and 12.04 correspond with the "paragraph D" criteria of Listing 12.05. R. 35–36. The ALJ also specifically found that Plaintiff did not meet the "paragraph C" criteria of Listing 12.02 and 12.04. R. 36. Moreover, an ALJ's failure to expressly refer to the criteria of Listing 12.02 is not fatal to her decision "as long as the ALJ's review of the record permits meaningful review of the step-three conclusions." *See Lopez v. Comm'r of Soc. Sec*., 270 F. App'x 119, 121 (3d Cir. 2008) (citations omitted); *cf. Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 262–63 (3d Cir. 2006) (rejecting the argument that the ALJ was required to identify which listings he used in his decision, stating that "the ALJ is not required to use any specific format or language in his analysis, as long as he sufficiently develops the record to permit meaningful judicial review[,]" and finding that "the ALJ did state what listings he used for comparison" by citing to Listing 1.00, which "is not merely an introductory treatise"); *Jones*, 364 F.3d at 503–05 (finding that, even though the ALJ did not expressly refer to any specific Listing, the ALJ's analysis satisfied step three because the decision indicated that the ALJ considered the appropriate factors). Here, "the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the Claimant] did not meet the requirements for any listing, including" Listing 12.02.  *See Jones*, 364 F.3d at 505; *see also Lopez*, 270 F. App'x at 122 (finding that

11

the "ALJ's failure to discuss specific Listings is not reversible error . . . because the ALJ analyzed all the probative evidence and explained his Decision sufficiently to permit meaningful review"); *Rivera*, 164 F. App'x at 262−63. In considering whether Plaintiff meets or medically equals any listing and when determining Plaintiff's RFC, the ALJ engaged in a comprehensive review of the medical evidence relevant to Listing 12.02, detailing years of medical records and hearing testimony. R. 35−40. Although Plaintiff cites to some arguably favorable evidence, the ALJ's recitation of the evidence provides substantial support for her decision as set forth in more detail below.

At the time of the ALJ's decision on May 13, 2015,[5] Listing 12.02 addressed organic mental disorders, *i.e.*, psychological or behavioral abnormalities associated with a dysfunction of the brain. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.02 (2015) (explaining further that, with such disorders, "[h]istory and physical examination or laboratory tests demonstrate the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities"). A claimant meets the required level of severity for this listing when the requirements of both paragraphs A and B are satisfied, or when the requirements of both aragraphs A and C are satisfied:

> A. Demonstration of a loss of specific cognitive abilities or affective changes and the medically documented persistence of at least one of the following:
> 1.  Disorientation to time and place; or

---

[5] In her opening brief, Plaintiff argues that she meets the criteria of Listing 12.02 as it existed at the time of the ALJ's decision in 2015 as well as the "new" criteria amended effective January 17, 2017. *Plaintiff's Brief*, ECF No. 21, pp. 12−17. However, in her reply, Plaintiff insists that she meets the criteria in the version in effect at the time of the ALJ's decision, implicitly conceding that only that version applies here. *Plaintiff's Reply Brief*, ECF No. 31, pp. 2−5. This Court agrees with Plaintiff's current position.  *See* Revised Medical Criteria for Evaluation Mental Disorders, 81 Fed. Reg. 66138-01, at n.1 (Sept. 26, 2016) ("We expect that Federal courts will review our final decisions *using the rules that were in effect at the time we issued the decisions*.") (emphasis added).

12

2. Memory impairment, either short-term (inability to learn new information), intermediate, or long-term (inability to remember information that was known sometime in the past); or

3. Perceptual or thinking disturbances (e.g., hallucinations, delusions); or

4. Change in personality; or

5. Disturbance in mood; or

6. Emotional lability (e.g., explosive temper outbursts, sudden crying, etc.) and impairment in impulse control; or

7. Loss of measured intellectual ability of at least 15 I.Q. points from premorbid levels or overall impairment index clearly within the severely impaired range on neuropsychological testing, e.g., the Luria–Nebraska, Halstead–Reitan, etc.;

AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02 (2015).

As previously noted, at step two the ALJ found the following severe impairments: bipolar disorder, degenerative changes of the lumbar spine, history of brain aneurysm with spontaneous resolution, essential hypertension, asthma, obesity, and mildly deficient intellectual functioning. R. 34. At step three, as previously noted, the ALJ specifically considered whether Plaintiff's

mental impairments, singly or in combination, meet or medically equal Listing 12.02, 12.04, and 12.05, and concluded they do not, reasoning as follows:

> No treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show signs or findings that are the same or equivalent to those of any listed impairment. . . .
>
> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.02, 12.04,[6] and 12.05.[7] In making this finding, the undersigned has considered whether the "paragraph B" criteria ("paragraph D" criteria of listing 12.05) are satisfied. To satisfy the "paragraph B" criteria ("paragraph D" criteria of listing 12.05), the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning;

---

[6] At the time of the ALJ's decision, Listings 12.02 and 12.04, which addressed affective disorders, shared the same "paragraph B" and "paragraph C" criteria. *Compare id. with* 20 C.F.R. Pt. 404, Subpt. P, App. 1, *id.* at § 12.04.

[7] A claimant meets Listing 12.05, which addresses intellectual disability and which refers to significant subaverage intellectual functioning with deficits in adaptive functioning with an onset of the impairment before age 22, if the requirements of paragraphs A, B, C, or D are satisfied:

> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>
> OR
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
>
> OR
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

*Id.* at § 12.05.

marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

In activities of daily living, the claimant has mild restriction. She lives with a friend and receives some help with activities of daily living due to forgetfulness. In social functioning, the claimant has moderate difficulties. She has related that she doesn't like people and has been noted to be irritable[. T]his was apparent at examinations. With regard to concentration, persistence or pace, the claimant has moderate difficulties. Her concentration was fair or moderately reduced upon examination. As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria ("paragraph D" criteria of listing 12.05) are not satisfied.

The undersigned has also considered whether the "paragraph C" criteria of 12.02 and 12.04 are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria.

The limitations identified in the "paragraph B" ("paragraph D" criteria of listing 12.05) criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B'" mental function analysis.

R. 35–36 (discussing further why Plaintiff's mental impairments do not meet the criteria for Listing 12.05). In addition, at step four, the ALJ considered hearing testimony that, *inter alia*, Plaintiff attended some college, has some emotional problems, does not get along with people and does not socialize, plays on her laptop,  prefers to do the cooking and cleaning herself if her roommate and friend, Michael Thompson, "doesn't do it right;" her hygiene is good, she takes care of her personal grooming, and is able to make coffee. R. 37. The ALJ also provided a

comprehensive review of the medical evidence relevant to Listing 12.02, detailing years of medical records and state agency review. R. 25–29. A CT scan in 2010 revealed a small aneurysm, but a CT scan of her head in 2011 was normal as was a neurological exam in 2014. R. 38. Plaintiff has a history of cocaine and alcohol abuse and did not follow through with medical treatment when advised to do so. R. 37–38, 40. In 2014, she treated with Jennifer Gyi, D.O., for complaints of back pain, but the record reflects that Dr. Gyi ultimately discharged Plaintiff from her care when Plaintiff refused to allow a physical exam after being told that she would not be prescribed medication, broke the contract twice, was extremely disrespectful, and walked out in the middle of an exam. R. 38–39. Plaintiff did not seek psychiatric care and was not prescribed psychotropic medication. R. 39. At a consultative examination with Paul Fulford, Ph.D., in March 2013, Plaintiff had no memory or concentration problems. *Id*. Dr. Fulford diagnosed bipolar disorder and gave Plaintiff a global assessment of functioning score of 65, which indicated only mild symptomatology. *Id*. At a consultative examination in February 2015, Steven Yalkowski, M.D., noted that Plaintiff was somewhat irritable, poorly motivated, and more interested in complaining than participating in the exam. *Id*. Although Plaintiff achieved a full score IQ of 66, which placed her in the mildly deficient range, Dr. Yalkowski commented that the exam was somewhat limited by poor motivation. *Id*. He also speculated that Plaintiff had a learning disorder. *Id*. The ALJ also considered the state agency reviewing physicians who found that Plaintiff did not meet the criteria for paragraphs B or C of Listing 12.04 (which is the same as those for Listing 12.02) and that she was capable of performing light work. R. 40, 134.

This thorough review by the ALJ of the evidence relevant to Listing 12.02 permits meaningful review by this Court. *See Jones*, 364 F.3d at 505; *cf. Klangwald v. Comm'r of Soc. Sec.*, 269 F. App'x 202, 204 (3d Cir. 2008) ("After broadly concluding that [the claimant] 'has

no impairment, which meets the criteria of any of the listed impairments,' the ALJ followed this conclusion with a searching review of the medical evidence. Under our precedents, this is sufficient."). This record constitutes substantial evidence supporting the ALJ's findings at step three that Plaintiff had only mild restrictions in activities of daily living, only moderate difficulties in social functioning and concentration, persistence and pace, and no episodes of decompensation for an extended duration and therefore did not meet the criteria of Listing 12.02B. *Id.*; *see also Parks v. Comm'r of Soc. Sec.*, 401 F. App'x 651, 655 (3d Cir. 2010) (agreeing with the ALJ who found that the ability to read, watch television, and play video games "required a degree of concentration, persistence, or pace" and holding "that when all of the testimony is considered together, substantial evidence supports the ALJ's finding of moderate limitations in concentration, persistence, or pace"). Similarly, substantial evidence supports the ALJ's finding that Plaintiff did not meet the criteria of Listing 12.02C, which requires, *inter alia*, a medically documented history of a chronic organic mental disorder of at least two years' duration with, *inter alia*, symptoms or signs currently attenuated by medication or psychosocial support, and repeated episodes of decompensation of extended duration; or a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or a current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. *Id.*; 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02C (2015).[8]

---

[8] Plaintiff contends that she meets the criteria of 12.02A and complains that the ALJ did not address this criteria in her decision, thus requiring remand. *Plaintiff's Brief*, ECF No. 21, pp. 13–14 (providing no citations to the record); *Plaintiff's Reply Brief*, ECF No. 31, pp. 2–3. However, "the omission of the 'paragraph A' analysis does not render the ALJ's decision unreviewable"

Although Plaintiff accuses the ALJ of cherry picking favorable evidence and cites to other portions of the medical record that she believes support her argument that she meets or medically equals Listing 12.02, *Plaintiff's Brief*, ECF No. 21, pp. 13–17; *Plaintiff's Reply Brief*, ECF No. 31, pp. 2–6, there is no evidence of cherry picking and the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard].");  *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . .  [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)); *Davison v. Comm'r of Soc. Sec.*, No. CV 18-15840, 2020 WL 3638414, at *8 (D.N.J. July 6, 2020) ("The ALJ cited to multiple other reports and surveyed a significant amount of evidence. He was not required to discuss or describe every page of the record. He did not, as [the claimant] seems to suggest, cherry pick a handful of positive statements out of a universe of negative statements."); *Lewis v. Comm'r of Soc. Sec.*, No. 15CV06275, 2017 WL 6329703, at *8 (D.N.J. Dec. 11, 2017) ("Though the Plaintiff accuses the ALJ of cherry-picking evidence, it actually appears that the Plaintiff is the one guilty of cherry-picking since the bulk of the medical record seems to indicate minimal issues with executive function and mental capabilities."). The Court therefore declines Plaintiff's invitation to re-weigh

---

where "[i]t is quite plain that the ALJ's decision rested on the absence of both 'paragraph B" and 'paragraph C' criteria[.]" *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016).

the evidence or to impose her or this Court's own factual determination. *See Chandler*, 667 F.3d at 359; *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Circ. 2014) (stating that a reviewing court "must not substitute [its] own judgment for that of the fact finder").

Plaintiff also argues that the ALJ's treatment of Dr. Yalkowski's IQ test results at step three warrants remand. *Plaintiff's Brief*, ECF No. 21, pp. 16–17; *Plaintiff's Reply Brief*, ECF No. 31, pp. 5–7. The ALJ considered these results when concluding that Plaintiff did not meet or medically equal Listing 12.05, reasoning as follows:

> Turning back to listing 12.05, the requirements in paragraph A are met when there is mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded. In this case, these requirements are not met because the claimant's cognitive deficits were mild. She is able to attend college and work.
>
> As for the "paragraph B" criteria, they are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 59 or less.
>
> Finally, the "paragraph C" criteria of listing 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. The claimant's full-scale IQ of 66 was noted to be affected by her poor motivation and possibility of any learning disorder. She was able to attend college and work at semiskilled jobs for years.

R. 36.

According to Plaintiff, "[t]he ALJ erred in failing to credit the test results of Dr. Yalkowski, only discussing the findings under listing 12.05 . . . Clearly the plaintiff is not aware that this is a 12.05 case." *Plaintiff's Brief*, ECF No. 21, p. 16. Plaintiff goes on to argue that "[t]he ALJ erred in her duty to fully and fairly develop the record by concluding that she would discredit the only IQ psychological evaluation in [the] record which was performed by SSA's own psychological evaluator[.]" *Id*. at 17; *see also id.* at 18 ("Since the ALJ chose to discredit her own consultant's test results, she was under a duty to either recontact treating or consulting

sources, or order a new IQ evaluation."); *Plaintiff's Reply Brief*, ECF No. 31, p. 6 ("As

previously argued in Plaintiff's Brief, if the ALJ had any question about validity of

SSA's own psychological evaluator, Dr. Yalkowski, or if there was insufficient evidence in

record, then the ALJ had affirmative duties to fully and fairly develop the record[.]").

Plaintiff's arguments are not well taken. As a preliminary matter, the ALJ may reject IQ

scores "where there is evidence that the claimant was malingering or deliberately attempting to

distort the results during the test administration[.]" *Coleman v. Comm'r of Soc. Sec.*, No. CV 15-

8839, 2019 WL 1594269, at *6 (D.N.J. Apr. 15, 2019) (citations omitted). Here, the ALJ

specifically explained that she discounted the IQ scores because Dr. Yalkowski noted that

Plaintiff's score was affected by, *inter alia*, her poor motivation. R. 36. Substantial evidence

supports this determination. *See Coleman*, 2019 WL 1594269, at *6. However, even if the ALJ

erred in doing so, Plaintiff has not explained how the ALJ's decision to discount this IQ score in

the analysis of Listing 12.05 harms her or how crediting this score establishes that she meets the

B or C criteria of Listing 12.02 or would otherwise lead to a different result. *See generally*

*Plaintiff's Brief*, ECF No. 21; *Plaintiff's Reply Brief*, ECF No. 31. Based on this record, Plaintiff

has shown, at most, only harmless error that does not require remand. *See Shinseki v. Sanders*,

556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls

upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally

must explain why the erroneous ruling caused harm."); *Rutherford*, 399 F.3d at 553 (finding that

"a remand is not required here because it would not affect the outcome of the case").

Finally, to the extent that Plaintiff complains that the ALJ had duty to develop record by

recontacting treating or consulting physicians or by ordering additional IQ testing, that complaint

is unavailing. An ALJ is required to recontact a medical source for clarification only "when they

provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear. . . . " SSR 96-5p. Here, there is nothing ambiguous about Dr. Yalkowski's note regarding his belief that Plaintiff's poor motivation affected her IQ test score. R. 36. Accordingly, the Court finds no error in the ALJ's failure to recontact Dr. Yalkowski, or any medical source, for additional information before discounting the IQ score.

Plaintiff's argument that the ALJ should have sought additional IQ testing is equally unpersuasive. Even though an ALJ retains the duty to "develop a full and fair record in social security cases," *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995), "the ALJ need not search for all relevant evidence available 'because such a requirement would shift the burden of proof.'" *Crocker v. Comm'r of Soc. Sec.*, No. CV 15-8231, 2017 WL 1181584, at *4 (D.N.J. Mar. 29, 2017) (quoting *Lynn v. Comm'r of Soc. Sec.*, No. 12-1200, 2013 WL 3854460, at *15 (W.D. Pa. July 24, 2013)). "Moreover, where a claimant is represented by counsel before the ALJ, an ALJ's 'passivity in developing the record will only be sufficient for remand or reversal when it has clearly prejudiced the claimant.'" *Crocker*, 2017 WL 1181584, at *4 (quoting *Cartagena v. Comm'r of Soc. Sec.*, No. 10-05712, 2012 WL 1161554, at *4 (D.N.J. Apr. 9, 2012)). Here, Plaintiff was represented by counsel in the underlying administrative proceedings, including during the administrative appeals process. R. 105, 312–20. Plaintiff's counsel never asked for another IQ test or to keep the record open to obtain additional IQ testing. *See id.* In addition, for the reasons previously discussed, substantial evidence supports the ALJ's determination that Plaintiff did not meet the paragraph B or C criteria for Listing 12.02. R. 35–40. Under these circumstances, the Court cannot conclude that the ALJ erred in failing to order additional IQ testing. *See Gist v. Barnhart*, 67 F. App'x 78, 82 (3d Cir. 2003) (rejecting the plaintiff's argument that remand for, *inter alia*, additional intellectual function testing was required and

clarifying that such remand is required only "where the medical evidence suggests that a finding of medical equivalence to a listing is reasonable"); *Colombin v. Colvin*, No. CV 16-311, 2017 WL 272029, at *4 (W.D. Pa. Jan. 19, 2017) ("Plaintiff was represented by counsel at the hearing, yet, during the hearing, his counsel did not ask the ALJ to order a current IQ test on Plaintiff's behalf or to keep the record open to secure an IQ test."); *Smith v. Colvin*, No. CV 15-1426, 2016 WL 6729120, at *3 (W.D. Pa. Nov. 15, 2016) ("Yet, at no time did counsel seek to keep the record open to secure a current valid IQ test or ask the ALJ to order one on Plaintiff's behalf or request any other additional evidence be obtained.").

In short, and fairly reading the ALJ's decision as a whole, this Court concludes that substantial evidence supports the ALJ's finding that Plaintiff's mental impairments do not meet or medically equal any listing, including Listing 12.02.

### C.    Subjective Complaints

Plaintiff also challenges the ALJ's consideration of her subjective complaints, apparently arguing that the ALJ improperly minimized Plaintiff's impairments. *Plaintiff's Brief*, ECF No. 21, pp. 18–22; *Plaintiff's Reply Brief*, ECF No. 31, p. 8. This Court disagrees.

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)).  Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)).  Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 96-7p, 1996 WL 374186 (July 2, 1996); *see also* SSR 16-

3p, 2016 WL 1119029 (March 16, 2016).[9] First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s)–i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques–that could reasonably be expected to produce the individual's pain or other symptoms." SSR 96-7p. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." *Id*. *See also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this evaluation, an ALJ considers objective medical evidence as well as other evidence relevant to a claimant's symptoms. 20 C.F.R. § 416.929(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and

---

[9]SSR 16-3p superseded SSR 96-7p on March 26, 2016, and eliminated the use of the term "credibility." SSR 16-3p. However, "while SSR 16-3P clarifies that adjudicators should not make statements about an individual's truthfulness, the overarching task of assessing whether an individual's statements are consistent with other record evidence remains the same." *Levyash v. Colvin*, No. CV 16-2189, 2018 WL 1559769, at *8 (D.N.J. Mar. 30, 2018).

other factors concerning your functional limitations and restrictions due to pain or other symptoms).

Finally, "[t]he ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").

Here, the ALJ followed this two-step evaluation process. After considering the record evidence, including Plaintiff's hearing testimony, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." R. 37. As set forth in more detail above, the ALJ also detailed years of record evidence, R. 37–40, which she summarized as follows:

> The claimant's presentation at all of the consultative examinations indicated poor cooperation. Moreover, there is little ongoing regular treatment with physicians and no evidence of psychiatric treatment or the taking of prescription mental health medications. The most recent follow-up on the claimant's brain aneurysm was negative. She has no residuals from the aneurysm documented in 2010 and there is no evidence of her having two others, as she testified. Her lumbar MRI has minimal pathology. She failed to attend the prescribed physical therapy and broke her narcotic medication contract and was consequently discontinued from pain management. She has a history of cocaine abuse. The consultative examiner found no cause for the pain she claimed she had, and her own physician observed that she never appeared to be in distress, yet reported 10/10 pain. She refused to cooperate with one of the examiners and never had any strength or sensation deficits. Her limitations on movement were no more than moderate at the one examination where she agreed to move. There is no evidence of any knee pathology and clinical findings were completely negative. She testified that her roommate does the chores, unless she isn't satisfied with his job, when she does them herself. On the Function

Report (E file) she wrote that she did light cooking, swept, wiped counters and went shopping once a month with her friend.

R. 40. The Court finds no error with the ALJ's consideration of Plaintiff's subjective complaints in this regard.

Plaintiff, however, complains that the ALJ considered that she "did not comply with medical treatment or keep appointments, but failed to take into consideration her documented cognitive and memory impairments or her personality changes secondary to her head trauma and brain aneurysm as limiting her ability to follow through with treatment or complete tasks." *Plaintiff's Brief*, ECF No. 21, p. 22. Plaintiff's argument is not well taken. As an initial matter, although Plaintiff cites to "Id." to support this contention, it is not clear to what page(s) in the record Plaintiff intends to refer. The prior cite on an earlier page of her brief refers to R. 35, which reflects part of the ALJ's analysis at step three, but it is not immediately clear how R. 35 supports Plaintiff's argument; she has not pointed to record evidence establishing personality or cognitive impairments secondary to head trauma or a brain aneurysm. "Lacking any direction from [the claimant] as to the specific [evidence] at issue, we will not scour the record to attempt to discern [the claimant's] position." *Atkins v. Comm'r Soc. Sec.*, No. 19-2031, 2020 WL 1970531, at *4 (3d Cir. Apr. 24, 2020); *see also United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("[T]his Court has frequently instructed parties that they bear the responsibility to comb the record and point the Court to the facts that support their arguments."). In any event, the ALJ specifically considered Plaintiff's history of headache with multiple ER visits as well as her small aneurysm reflected in a 2010 CT scan, but went on to note a normal CT scan in 2011. R.

37−38. As previously discussed, the ALJ also considered Plaintiff's cognitive impairments, but concluded, based on the record, that these caused only mild or moderate limitations. R. 35−40.[10]

Accordingly, this Court concludes that the ALJ has sufficiently explained her reasoning in assessing Plaintiff's subjective complaints, and that her findings in this regard are supported by substantial evidence in the record. Her evaluation of Plaintiff's subjective complaints is therefore entitled to this Court's deference. *See* SSR 96-7p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's testimony where "the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited Claimant's daily activities and objective medical reports").

### D.      Step Four

Plaintiff also argues that substantial evidence does not support the ALJ's RFC determination. *Plaintiff's Brief*, ECF No. 21, pp. 22−25; *Plaintiff's Reply Brief*, ECF No. 31, pp. 8−9. This Court disagrees.

A claimant's RFC is the most that the claimant can do despite the claimant's limitations. 20 C.F.R. § 416.945(a)(1). At the administrative hearing stage, an ALJ is charged with determining the claimant's RFC. 20 C.F.R. §§ 416.927(e), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining

---

[10] To the extent that Plaintiff challenges the RFC in light of these limitations, the Court addresses this issue next.

physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, an ALJ has a duty to consider all the evidence. *Plummer*, 186 F.3d at 429. However, the ALJ need include only "credibly established" limitations. *Rutherford*, 399 F.3d at 554; *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to exclude from the RFC "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

Here, the ALJ determined that Plaintiff had the RFC to perform light exertion subject to various additional non-exertional limitations:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform simple, routine tasks at the light level of exertion as defined in 20 CFR 416.967(b). She cannot climb ladders, ropes or scaffolds or work around hazards, which I define as moving mechanical parts or at unprotected heights. She cannot have concentrated exposure to temperature extremes, wetness, humidity, fumes, odors, dusts, gases and poor ventilation. She can occasionally climb ramps and stairs, balance, kneel, stoop, crouch and crawl. She can have occasional contact with coworkers and supervisors, but no direct work-related contact with the public. She can work around others, but not on teams or in collaboration with others. She can make simple decisions and adapt to occasional changes and essential work tasks.

R. 36. In making this determination, the ALJ detailed years of record evidence, including, *inter alia*, that Plaintiff attended some college, has some emotional problems, does not get along with people and does not socialize, plays on her laptop,  prefers to do the cooking and cleaning herself if her roommate and friend "doesn't do it right," maintains good hygiene, takes care of her personal grooming, is able to make coffee, has a history of a small aneurysm in 2010 that did not

appear in a 2011 CT scan, has a history of cocaine and alcohol abuse and a history of not following  through with medical treatment when advised, is uncooperative in medical examinations, failed to seek psychiatric care, has no history of prescribed psychotropic medication, had no memory or concentration problems reflected in a March 2013 examination, has a diagnosis of bipolar disorder with a global assessment of functioning score of 65, a full IQ score of 66 that was affected by her poor motivation, and was found by the state agency reviewing physicians that she was capable of performing light work. R. 37−40. The record unquestionably contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

In challenging this determination, Plaintiff simply recites medical evidence and does not point to evidence documenting how those conditions impair her functioning or result in greater or different restrictions than those found by the ALJ and which would lead to a different outcome. *See Plaintiff's Brief*, ECF No. 21, pp. 22−25; *Plaintiff's Reply Brief*, ECF No. 31, pp. 8−9. Notably, "[a] diagnosis alone . . . does not demonstrate disability." *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *cf. Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act"). Plaintiff does not identify specific functional limitations found by any medical source that the ALJ failed to include in the RFC. *Id*. To the extent that Plaintiff relies on her own subjective statements to undermine the ALJ's RFC determination, the ALJ discounted these statements as inconsistent with the medical evidence as

previously discussed. For all these reasons, this Court concludes that the RFC found by the ALJ enjoys substantial support in the record.

### E.      Step Five

Finally, Plaintiff challenges the ALJ's step five determination, arguing that the Commissioner failed to carry his burden at that stage because the hypothetical questions posed to the vocational expert, which included the ALJ's RFC determination, failed to include all of Plaintiff's claimed limitations. *Plaintiff's Brief*, ECF No. 21, pp. 25–26; *Plaintiff's Reply Brief*, ECF No. 31, p. 9. Plaintiff's argument is not well taken.

"[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work[.]" 20 C.F.R. § 416.960(b)(2). "While 'the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations,' . . . '[w]e do not require an ALJ to submit to the vocational expert every impairment alleged by a claimant.'" *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (quoting *Rutherford*, 399 F.3d at 554). "[T]o accurately portray a claimant's impairments, the ALJ must include all 'credibly established limitations' in the hypothetical. *Zirnsak*, 777 F.3d at 614 (citing *Rutherford*, 399 F.3d at 554). Credibly established limitations are limitations "that are medically supported and otherwise uncontroverted in the record." *Rutherford*, 399 F.3d at 554. "Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but cannot reject evidence for no reason or for the wrong reason." *Id*. (citations and internal quotation marks omitted). Finally, a "vocational expert's testimony concerning a claimant's ability to perform

alternative employment may only be considered for purposes of determining disability if the [ALJ's hypothetical] question accurately portrays the claimant's individual physical and mental" limitations. *Podedworny*, 745 F.2d at 218.

Here, the hypothetical question posed by the ALJ to the vocational expert assumed a claimant with Plaintiff's vocational profile and the RFC found by the ALJ. R. 36, 81–82. The vocational expert responded that the jobs of inspector and hand packager, photocopy machine operator, and sealing and canceling machine operator would be appropriate for such an individual. R. 82–83. For the reasons discussed earlier in this decision, this hypothetical sufficiently captured Plaintiff's credibly established limitations and therefore supported the ALJ's determination at step five. *See Rutherford*, 399 F.3d at 554; *Podedworny*, 745 F.2d at 218. To the extent that Plaintiff's criticism of the hypothetical questions is that all her alleged impairments were not addressed, this criticism boils down to an attack on the RFC determination itself, *see Rutherford*, 399 F.3d at 554 n.8, which this Court has already rejected for the reasons previously discussed.

In short, the Court finds that the Commissioner has carried his burden at step five of the sequential evaluation and concludes that substantial evidence supports his determination in this regard.

## V.     CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision. The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).


Date: October 28, 2020                                   *s/Norah McCann King*
                                                         NORAH McCANN KING
                                                         UNITED STATES MAGISTRATE JUDGE